JANE GREY, Respondent, *v.* TRIUMPH FILM CORPORATION, Appellant.

First Department, December 31, 1917.

Master and servant — action for breach of contract employing actress — evidence raising question for jury — evidence tending to show motive of defendant — erroneous refusal to charge.

Action brought by the plaintiff, an actress employed in the production of motion picture films, to recover damages for an alleged wrongful discharge by her employer before the expiration of the term of her employment. It is claimed by the plaintiff that she was compelled by the defendant to do additional work in order to provoke a controversy and to afford a pretext for her discharge, while the defendant contends that the plaintiff was insubordinate and refused to perform her obligations under the contract. Evidence examined, and *held*, that the case presented issues of fact for the determination of the jury.

It was competent for the plaintiff to show that the defendant had no further use for her services at the time of the discharge owing to the fact that the moving picture film had been completed and to show that

in placing the additional work upon her the defendant was not acting in good faith. But such evidence was competent only to enable the jury to determine the credibility of witnesses upon the issue as to whether the plaintiff was insubordinate and whether the defendant was justified in discharging her.

In such action it was reversible error to decline to charge, at the request of the defendant, that if the plaintiff was guilty of a refusal to perform her duty, or of insubordination, the defendant was justified in discharging her, irrespective of any question of good faith.

APPEAL by the defendant, Triumph Film Corporation, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 6th day of April, 1917, upon the verdict of a jury, and also from an order entered in said clerk's office on the 9th day of April, 1917, denying defendant's motion for a new trial made upon the minutes.

*I. Maurice Wormser* of counsel [*Leon Laski* with him on the brief], for the appellant.

*Arthur F. Driscoll* of counsel [*Dennis F. O'Brien* with him on the brief], *O'Brien, Malevinsky & Driscoll*, attorneys, for the respondent.

LAUGHLIN, J.:

On the 14th day of February, 1916, the plaintiff entered into an agreement in writing with the defendant, a corporation engaged in manufacturing and producing motion picture films, wherein it is recited that plaintiff is an actress of exceptional and extraordinary ability, and whereby defendant employed her for fifteen consecutive weeks from February 21, 1916, at $500 per week to enact the title role in the production of motion pictures and plays to be selected by it and she agreed to devote her entire time and attention to enacting the title roles and to give her best services thereto.

On the afternoon of the fifth day of the fourth week after, as plaintiff claims, all the scenes in which she was to act in a play called "The Surrender" had been finished, she was requested by one Golden, under whose direction the pictures had been taken, to act in an additional fireplace scene. While the picture of that scene was being taken a controversy arose between her and Golden concerning which

the testimony is conflicting. On the part of the plaintiff it is claimed that the taking of the scene was planned to provoke a controversy and to afford a pretext for her discharge in order to relieve defendant from the payment of her weekly salary as it then had no further play to produce; and on the part of defendant it is claimed that plaintiff was insubordinate and failed to obey its lawful directions and refused longer to perform her obligations under the contract. She was not, however, discharged that day. She testified that the next morning she was ready to resume her duties but that defendant did not send an automobile for her as it usually had done; that she thereupon telephoned to Golden who claimed, in effect, that she had abandoned the contract the day before, which she denied, but that when he told her what he claimed she had said the day before she stated to him that if she had said it she apologized and was ready to proceed; that he refused to permit her to resume her duties and referred her to Mr. Steger, the president of the defendant, who requested her to call at his office at five o'clock that afternoon, which she did, and that he then told her, in effect, that she was not at fault, and that Golden only was responsible for the disagreement, and he also informed her that they had no other play for her to act in for the present. Her testimony on these points is controverted, but the uncontroverted evidence shows that the following Monday she received a notice in writing in the name of the company, signed by Steger, discharging her for her failure to report for duty on Saturday and for insubordination and failure and refusal to obey reasonable rules and regulations and for discourteous and insulting treatment of the director and officials of the company and for extravagant demands and frequent violation of other terms of the contract. Her salary for the first three weeks had been paid and a check for five-sixths of the fourth week's salary was inclosed with the notice of discharge but she returned it.

The plaintiff brought an action in the Supreme Court for damages for the wrongful discharge and at the same time sued in the Municipal Court for the fourth week's salary. The latter action was consolidated with the former before the trial.

The case presented issues of fact for the determination of the jury. The evidence tending to show that defendant had no further use for plaintiff's services at the time of the discharge, and that in requiring the fireside scene it was not acting in good faith, was material and competent to enable the jury to determine the credibility of witnesses on the issue as to whether plaintiff was insubordinate or, in other words, upon the issue as to whether she acted properly and as directed, as she claimed, or whether defendant was justified in, discharging her, as it claimed. That evidence, however, had no other legitimate bearing and should have been confined to that issue. On this point the learned trial justice, doubtless inadvertently, fell into error. In the body of the main charge, after properly and very clearly instructing the jury that defendant was justified in discharging plaintiff and she was not entitled to recover if she was guilty of insubordination of any kind, the court said: " But if there was in fact no disobedience, if you find, in fact, that there was no insubordination and that she performed such services required of her as she could reasonably be expected to perform, in that event she is entitled to be compensated for the damage she has sustained in consequence of the breach of this contract. Having in mind all the evidence adduced during the course of this trial, you may say whether the discharge was in good faith for a violation of duty, or whether it was a scheme of the defendant to be rid of an expense which could bring no return until a new play had been acquired. The burden of proving this, as I have said to you, is upon the defendant." By these instructions the jury may have inferred that even though plaintiff was insubordinate and defendant might have discharged her therefor, if it acted in good faith in so doing, yet that it could not take advantage of her insubordination to rid itself of liability under the contract unless it acted in good faith. Evidently, with a view to having the jury set right on that point counsel for defendant requested the court to instruct the jury " that if the plaintiff was guilty of a refusal to perform her duty, or guilty of insubordination, either or both, in the way in which the court defined those terms in its charge to the jury, then the defendant was justified in discharging the plaintiff and the question of good

faith has absolutely nothing to do with the case." To this request the court replied: " I decline to so charge." No further instruction was given on that point. We are of opinion that the defendant was entitled to have the jury instructed as requested. The request embodied a correct proposition of law (26 Cyc. 995; 20 Am. & Eng. Ency. of Law [2d ed.], 32; *Jackson* v. *New York Post Graduate, etc., Hospital,* 6 Misc. Rep. 101; Wood Mast. & Serv. [2d ed.] 235, 236; see, also, *Corrigan* v. *E. M. P. Producing Corp., Nos. 1 & 2,* and cases cited, 179 App. Div. 810), clearly expressed, which was applicable to the case and quite appropriate in view of what the court had said in the main charge, as already stated.

It follows that the judgment and order should be reversed and a new trial granted, with costs to appellant to abide event.

CLARKE, P. J., DOWLING, SMITH and PAGE, JJ., concurred.

Judgment and order reversed, new trial ordered, costs to appellant to abide event.