In the Matter of CHARLES E. ARMSTRONG, INC., Respondent, *v.* D. L. SILVERMAN, Appellant.

First Department, December 18, 1925.

**Sales — proceedings by buyer of goods to compel arbitration under contract — defense that no contract was made — jury trial on question of existence of contract — reversible error to admit evidence that price fell after alleged contract was made.**

In proceedings to compel arbitration under a contract for the sale of goods, in which the defendant seller demanded a jury trial on the question of the existence of any contract, it having interposed a defense denying that the contract was made, it is reversible error for the court to admit evidence that the price of the goods fell after the alleged contract was made, for the motive of the defendant seller is not in issue, the only issue being whether or not a valid contract was made by the parties.

APPEAL by D. L. Silverman from a final order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 31st day of March, 1925, adjudging and decreeing that a certain contract between the appellant and the respondent is " valid and subsisting," and ordering the appellant to " join with the petitioner, Charles E. Armstrong, Inc., in arbitrating the differences arising " between them thereunder.

The appeal also brings up for review an intermediate order in the proceeding, entered in said clerk's office on the 21st day of January, 1925, submitting certain framed issues to be tried by jury, and also an order entered in said clerk's office on the 26th day of February, 1925, denying appellant's motion for a new trial.

*Manheim & Wachtell [Samuel R. Wachtell* of counsel], for the appellant.

*Lee, Smyth & Wise [J. Harlin O'Connell* of counsel; *Nathan A. Smyth* with him on the brief], for the respondent.

DOWLING, J.:

This proceeding was commenced pursuant to section 3 of the Arbitration Law by the service of a petition and notice of application for an order directing that an arbitration proceed. On the return day the appellant appeared and denied that he had made the contract in question and demanded a trial by jury of that issue, which was had, with the result that the jury found a verdict in favor of the respondent, answering in the affirmative the following question: " Did the parties hereto on or about the 21st day of August, 1924, enter into a valid, subsisting contract, whereby the said D. L.

Silverman sold to the said Charles E. Armstrong, Inc., 300 bags of pimento of good, merchantable quality and wherein it was provided that all questions arising thereunder be subject to the rules of the American Spice Trade Association, printed on the reverse of the said contract according to the form of contract which is attached to the petition herein? ''

A motion to set aside the verdict was denied, and thereafter the order appealed from was entered, directing that the arbitration proceed.

On or about August 21, 1924, the appellant telephoned a spice broker by the name of John Clarke, and offered for sale 300 bags of pimento at a price of five cents per pound. Clarke thereupon telephoned the respondent, offering the pimento at the price stated, and the offer was accepted by it. Clarke then prepared contracts covering the transaction on the standard form of arrival contract of the American Spice Trade Association, of which both the petitioner and respondent were, at the time, members. On the back of these standard contracts are to be found detailed rules, one of which provides for the arbitration of disputes arising under the contract. After Clarke had prepared the contracts he signed them as broker and forwarded them to appellant for signature, who signed the buyer's copy but typed on the face of each copy the following words: '' No arbitration. In case of disputes Messrs. John Clarke & Co. shall endeavor to settle same amicably, failing which this contract will be considered cancelled.''

After appellant had made this change in the contract, he returned the copies to Clarke. What happened afterwards is a matter of dispute.

Appellant claims that a few days after he mailed these duplicate contracts to Clarke, the latter called him up and said that respondent refused to accept the contract on account of the no-arbitration clause which had been added by appellant, and asked the latter to waive it, adding that respondent was one of his best customers and that he did not want to get into trouble with him on account of this contract. Appellant refused to consent to any change in his addition to the contract, saying that respondent would have to take or leave the goods under the contract with the '' no-arbitration '' clause therein. Clarke then pointed out that under a certain provision of the contract allowances for defect of quality in pimento were to be decided by the broker. Appellant rejoined that under the same provision the dispute would have to go to arbitration in case the broker could not adjust the differences. Clarke lost his temper, stated that he had been the president of the American Spice Trade Association for many years, and that he

would not have appellant talk to him that way; that as broker he would erase the "no-arbitration" provision himself and initial it in his own name. Appellant replied that he would not accept the contract with any such erasure, as he did not intend to submit this sale to arbitration. About a week after this conversation one copy of this alleged contract was received by appellant. The "no-arbitration" clause was erased, the erasure being initialed by one Critchly in behalf of respondent, and by Clarke, ostensibly in appellant's behalf. Appellant paid no attention to the contract in its changed form, and never signed the same.

On the other hand, Clarke testified that when he received the contracts with the additional "no-arbitration" clause, he acted as follows: " I called up Mr. Silverman and told him that that was not satisfactory; it had not been stipulated; was entirely gratuitous; had nothing to do with the sale; and I asked him why he wrote that in, and he said he did not want any arbitration with anybody. I said ' You did not say that when you sold the goods.' And I said, ' If you look on the back of the contract and read it, you will see that this contract provides that in this one article the quality on arrival shall be subject to the decision and approval of the selling broker; any allowances made shall be made by the selling broker.' Then I asked Mr. Silverman, I said: ' Have you ever found me wanting in justice or fairness in such a matter that you should have this in? ' He said: ' Not you, but I don't want any arbitration; I am perfectly satisfied with your judgment and your fairness, but I don't want any arbitration.' I said: 'All right; then you understand the back of that contract now and you authorize me to strike that out.' He said: 'All right, I am perfectly satisfied to strike it out as long as you have the decision of the quality on arrival, you may strike that out and O. K. it and send it along.' And I did strike it out and O. K.'d it and sent it to Armstrong."

The only question submitted to the jury was as to whether or not a contract had been made in the form claimed on respondent's behalf by the broker Clarke, that is, whether there had been a meeting of the minds of the parties on such a contract, or whether in fact appellant had refused to sign such a contract or to agree thereto, and had agreed solely to the contract in the form in which he signed it, with the "no-arbitration" clause inserted; and whether appellant had thereafter consented to the elimination of that clause by Clarke from the contract as already signed by Silverman, even though he never signed any copy of the contract as thus amended.

This issue was a simple question of veracity and was submitted to the jury by the learned trial court in an adequate and impartial charge. But in my opinion prejudicial error was committed upon

the trial, requiring the reversal of the orders appealed from. Over the objection of appellant's counsel, respondent was permitted to prove that the market value of pimento, on September 22, 1924, was eight cents per pound, showing an increase of three cents per pound in such market value between the time of the alleged making of the contract and the time when the pimento was agreed to be delivered thereunder. The purpose of this proof was to indicate a motive for the seller's (appellant's) claimed repudiation of the contract.

There was no possible theory on which such evidence was offered except to indicate appellant's motive in seeking to escape from his contract, according to respondent's theory of the case. There is little sympathy to be expected from a jury for a seller who repudiates his contract on a rising market or a buyer who so acts on a falling one. It is difficult to do exact justice in such a case, even when the proof of a change in market conditions is compulsory in order to enable the party aggrieved to establish the damages he has sustained. In the present case the proof in question was not relevant on any issue presented to the jury, and its introduction, seeking to establish his motive in repudiating the contract, was particularly damaging to his case, especially as the testimony was very evenly balanced, coming entirely on both sides from interested witnesses. What the effect of this evidence upon the jury must have been is indicated by its effect on the learned trial court himself. In denying the motion for a new trial, he said: " The seller said and did nothing until performance was demanded. Then he denied that the broker had been authorized to make or initial the change in the contract for him and accordingly, asserted that there was no contract. Meanwhile, some three weeks had elapsed and the market price had risen to nearly double the agreed price. The seller argues it was error to allow evidence of this change in market price. But by keeping silent he remained in a position to stand on the contract if it proved advantageous. It is clear that the evidence objected to was logically relevant. It was not such as should have been excluded for any special reason."

Upon such an issue as that presented in this case, motive was immaterial and proof of it was not only irrelevant but most damaging to appellant. In the case of *Jackson* v. *New York Post Graduate, etc., Hospital* (6 Misc. 101; cited with approval in *Grey* v. *Triumph Film Corporation*, 181 App. Div. 107) the question involved was the discharge at the end of the first year of a solicitor of advertisements who had been employed under a written contract of employment for five years. Defendant pleaded justification, which was the sole issue. Upon the trial the plaintiff testified that shortly after he entered upon his duties under the five-year contract the

defendant attempted to get him to sign a new agreement making the old agreement terminable on thirty days' notice. This evidence was objected to by the defendant. Upon appeal the judgment was reversed. The court first stated that " ' the motive of the master in discharging the servant is not the issue, nor is it material. The simple question is, whether a legal cause existed for such discharge,' " and then said (at p. 103): " In the present case, no matter what the motive of the defendant in dismissing the plaintiff — whether as he urges, because defendant sought a better bargain with another — the sole issue on trial was: Did justifiable cause for plaintiff's discharge exist? If it did not, the verdict was necessarily for the plaintiff; if it did exist, the verdict was necessarily for the defendant. And yet plaintiff was allowed ' to try the case on the theory that it was a part of a general scheme to get some pretext for getting rid of the plaintiff without being made liable for damages.' Suppose the theory well founded, it would not have affected appellant's defense of legal justification for the discharge. How can we know that the jury did not accept the plaintiff's ' theory,' and award him the verdict on the sole ground of defendant's desire to be quit of the contract? "

And in the *Grey Case* (*supra*) this court held, in an action brought for an alleged unlawful discharge, that the question was solely one as to whether " the defendant [employer] was justified in discharging the plaintiff, and the question of good faith had absolutely nothing to do with the case."

So in the present case the sole question was whether appellant had authorized the amendment of the contract from the form in which he had signed it to one providing for arbitration generally, and evidence tending to show his motive for a claim on his part that he had never agreed to the change proposed by Clarke, nor ratified it, was improperly received and constituted reversible error.

The orders appealed from should, therefore, be reversed, with ten dollars costs and disbursements, and the motion to set aside the verdict of the jury and for a new trial should be granted.

CLARKE, P. J., MERRELL, McAVOY and MARTIN, JJ., concur.

Orders reversed, with ten dollars costs and disbursements, and motion to set aside verdict and for a new trial granted.